Williams, C. J.
The circuit court found, as the. plaintiffs allege-in- their petition, that they are the owners of improved farms, on which they reside, that front and abut for considerable distances on the public road in question, and that they own the fee of their lands to the center of the road. This road has long been used by them as their means of ingress and egress to and from their farms, and for all the purposes of a public highway. That: “The said highway upon the westerly, side of which these plaintiffs’ lands are located, is sixty feet wide from fence to fence, the width, of the sidewalk, between ditch, and.fence on each side is eight feet; and the.-width of;the *226 roadway as established is thirty-two feet; upon each side of said roadway and immediately adjacent thereto is a ditch six feet wide, from two to three feet deep, the entire frontage of plaintiffs’ land except seventy-five feet in front of the house on the land of said John Hurst, and about forty feet in front of the blacksmith shop on said land, and except also about 125 feet in front of the house on Daniel Hutchinson’s property, in all of which said places said ditch has been tiled and filled in, and upon the easterly side of said traveled roadbed immediately next to the ditch is a brick pavement eight feet wide. And upon the extreme westerly side and edge of said roadway, defendant railway company, purposes to construct a railway by laying ties, and placing thereon T rails, such as are ordinarily used by suburban railways, the nearest part of which shall not be nearer to the center of said roadway than eleven feet in accordance with the terms of said franchise, and nineteen feet from the nearest edge of the brick pavement upon the extreme opposite side of the said traveled roadbed, and to maintain upon the westerly side of said highway poles for the carrying of trolley wires, feed wires and .vires for the carrying of electric power to be sold to parties desiring electric light, heating or power, and to operate on said railway, cars propelled by electricity and further to carry upon same passengers and freight.”
That the railway company having presented to the board of county commissioners the written consent of the owners of more than half of the feet front of the lands abutting upon the public highway, but without the consent of any of the plaintiffs, obtained from that board the grant of a franchise to construct, lay, *227 maintain and operate for a period of twenty-five years, along and over this public highway, in all respects according to the plans and purposes of the railway company as hereinabove stated and set forth, “a single track street railway, with all suitable convenient side tracks, switches, turnouts, turntables, stations and appurtenances. Also for the right to construct and maintain all necessary wires to connect its feed wires with adjacent property along the route therein petitioned for, necessary to supply light, heat or power to such adjacent property and all other things necessary to operate a street railway with electricity or other approved motive power acceptable to the county commissioners. The right herein granted is, to operate a street railway for the transportation of passengers, baggage, packages, boxed and barreled freight, farm produce, express matter, and United States mail.”
The grant fixes a "time within which the railway shall be commenced, and completed, requires cars to be run over it “as often as three times each way daily,” and contains some regulation relating to the fare. The board of commissioners reserved the right to grant similar franchises to other companies.
The court announced as its conclusion of law, that, upon this state of facts the plaintiffs were not entitled to the relief they sought, and rendered judgment accordingly. In that conclusion we are unable to concur. In our opinion the construction and operation of the railroad as authorized and proposed, must necessarily constitute a serious obstruction to the plaintiffs’ use of the public highway as a means of access to their farms, and an additional burden on the highway not contemplated in its originally intended uses. The whole burden of the railway, with all of *228 its authorized appurtenances, is thrown entirely upon the side of the public road next to the plaintiffs’ lands, and between them and the traveled part of the roadway. The nature of that burden is not different in any material respect from that imposed by the construction and operation of a steam railroad. The difference, if any, is merely in the degree of the burden and not in its character; and can scarcely be less, in any degree. It may become more onerous and injurious. As shown by the findings of the court, the railroad is to be built and maintained on the “extreme westerly side and edge” of .the traveled way of the public road, that is between the traveled roadway and the plaintiffs’ lands, and the tracks are to be laid with the ordinary “T” rails which project some distance above the ties —the same kind of rails usually' employed in the construction of steam railroads through the country. While public crossings and extensions of farm lanes, are required to be planked to a certain extent, it often becomes convenient and necessary to drive onto and off the traveled roadway, elsewhere, with loaded and empty vehicles, to which this railway will present the same obstructions, and cause the same hinderance, delay and annoyance that attend the crossing of steam railroads. Then, this railroad company is authorized to construct and use, on the same side of the public road between its traveled way and the plaintiffs’ lands, “all suitable and convenient side tracks, switches, turnouts, turntables, stations and appliances,” without limit to their extent, other than as the company may deem them convenient and suitable. And, in addition to this, the company is given authority to erect and maintain on the same side of the public roadway, and next to the plaintiffs’ lands, all poles, which are of large dimen *229 sions, and all wares and other appliances, necessary to enable it to operate an electric plant for supplying light, power and heat to consumers, for profit. Besides, this company is authorized, not only to carry passengers, but also to transport over the road, “baggage, packages, boxed and barreled freight, farm produce, express matter, and United States mail;” and, though it is required to run cars over its road at least three times each wray daily, it is not limited as to the number of cars, or trains, for freight or passengers, or both combined, or the size or make-up of the trains. All things considered, it is reasonably certain from the facts found that the practical operation of such a road, within its capacity, must necessarily produce annoyance and inconvenience to the plaintiffs, and interfere with their property rights as abutting owners, of the same general character that result from the operation of steam railroads, and become an additional burden on the public highway, and taking of the plaintiffs’ property, in the same sense. The law' governing the rights of parties in such cases, is w'ell settled in this state, and wre need only to refer to the case of Railroad Co. v. Williams, 35 Ohio St., 168, for a clear and satisfactory statement of the law. It is there held that:
“As between the public and the owmer of land upon w'hich a common higlrway is established, it is settled that the public has a right to improve and use the public highwmy in the manner and for the purposes contemplated at ' the time it was established. The right to improve includes the pow'er to grade, bridge, gravel or plank the road in such a manner as to make it most convenient and safe for use by the public, for the purposes of travel and transportation in the customary manner, which is w'ell under *230 stood to be by the locomotion of man or beast, and by vehicles drawn by animals, without fixed tracks or rails to which such vehicles are confined when in motion. These constitute the easement which the public acquires by appropriating land for the right of way for a highway, and these, in legal contemplation, are what the owner is to receive compensation for when his land is appropriated for this purpose. The fee of the land remains in the owner; he is taxed upon it; and when the use or easement in the public ceases, it reverts to him free from incumbrance.
“In the exercise of the right of eminent domain, the state, through the general assembly, may delegate to a railroad corporation the power to appropriate a right of way for its road along and upon a public highway. But the appropriation for this purpose cannot be constitutionally made without making compensation to the public for the injury thereby occasioned to its easement in the highway; and also making compensation to the owner of private property taken for the use indicated. In such case, the rights of the public, and the rights of the owner, are entirely distinct; and the consent, express or implied, of one to the appropriation, would not bind or affect the rights of the other. But we are not dealing with the public right. It has already been said that the plaintiff, in the probate court, was the owner in fee of the land covered by the highway. This was her private property within the meaning of the constitution, subject only to the easement of the public therein. The nature and extent of this easement was above shown. The railroad company, by occupying the highway, constructing its track, and operating its trains thereon by steam motive power, completely diverted the highway from the uses and purposes for which it was *231 established. This new use to which the highway has been diverted, imposes burdens on the land that áre entirely different from, and in addition to, those that were imposed by the highway. The right to so divert the use, and impose additional burdens on the land, could only be acquired by the corporation by agreement with the owner, or by appropriating and making compensation therefor, in the mode prescribed by law.”
We are aware that decisions in other states may be found which do not entirely agree with ours; but the Ohio rule above announced has been established for many years, going back to Crawford v. Delaware, 7 Ohio St., 459, and has never been departed from. We are entirely satisfied with it.
And it is obvious also that within this rule the construction and operation of an electric plant, with its appliances, in connection with such railway, and on the same side of the traveled public roadway, for supplying heat, power and light to consumers for profit, constitutes another and additional burden which is an invasion of the plaintiff’s property rights. The relative rights of an owner of land and of a private electric company which seeks to erect and maintain electric poles and wires in a public way, on which such land abuts, without the owner’s consent, or without the compensation guaranteed to him by the constitution, were thoroughly considered in the case of Callen v. Columbus Edison Electric Light Company, 66 Ohio St., 166, ante.
The right of the owner to injunction against the threatened invasion and subjection of his property ngnts for the benefit of the corporation in such case is so logically and satisfactorily maintained in the opinion of Spear, J., that the citation of other au *232 thorities is not deemed necessary. The case on that subject is equally decisive of this one. '
It being ascertained that such an additional burden as • has been stated, will be imposed on this public highway and the plaintiffs’ abutting right and property, the extent of the burden and its effect on the value of the property, including the damages which the owners will sustain, are not questions for the determination of the court, but belong, under the constitution, to a jury, unless that mode of assessment is waived. Nor, is it any objection to the relief sought in this case that the plaintiffs might'have brought ah action for damages. They are entitled to injunction against the threatened invasion of the property rights. That is the primary remedy, long established, and best adapted to the preservation of their rights. They are not required to wait until the threatened injury is done, and then undergo the vexations and expense of a protracted litigation that in the end may afford but incomplete and inadequate relief. It was the primary duty of the railway company, before attempting to take from the plaintiffs, property rights which the constitution guarantees to them, to institute in a proper tribunal the necessary appropriation proceedings to obtain an assessment of compensation and damages to them. The company cannot interpose its violation of that duty, as a defense to the plaintiffs’ injunction.
Judgment reversed and judgment for plaintiffs in error for an injunction against the construction and operation of either the said railroad or electric light plant; and, in case the defendants in error have commenced- work on either, it is ordered and decreed *233 that within thirty days from the entry of this decree they remove all material and obstructions placed in the public highway by them, and restore the said public highway to the condition it toas in at the time and before the commencement of said work.
Burket, Spear, Davis and Price, JJ., concur.